JASON R. HULL [11202]
ANIKKA T. HOIDAL [16489]
**MARSHALL OLSON & HULL, PC**
TEN EXCHANGE PLACE, SUITE 350
SALT LAKE CITY, UTAH 84111
TELEPHONE: 801.456.7655
JHULL@MOHTRIAL.COM
AHOIDAL@MOHTRIAL.COM

ATTORNEYS FOR PLAINTIFFS AND
PROPOSED CLASS COUNSEL

*PRO HAC VICE FORTHCOMING

RAINA C. BORRELLI*
**STRAUSS BORRELLI PLLC**
980 N. MICHIGAN AVENUE, SUITE 1610
CHICAGO, IL 60611
TELEPHONE: 872.263.1100
RAINA@STRAUSSBORRELLI.COM

# UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| **BROOKE LILLEY**, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**JACOBSEN CONSTRUCTION COMPANY, INC.,**<br><br>Defendant. | **COMPLAINT**<br><br>**[PROPOSED CLASS ACTION]**<br><br>JURY TRIAL DEMANDED Case No.: |

Brooke Lilley ("Plaintiff"), through her attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Jacobsen Construction Company, Inc. ("Jacobsen Construction" or "Defendant"), alleging as follows, based upon information and belief, investigation of counsel, and personal knowledge of Plaintiff.

1

**INTRODUCTION**

1.      This class action arises from Defendant's failure to protect highly sensitive data.

2.      Jacobsen Construction recently discovered it had lost control over its computer network and cybercriminals accessed highly sensitive personal information stored on its computer network in at least two separate incidents.

3.      On information and belief, the data breach lasted for over two months, from September 21, 2023, to November 26, 2023.

4.      Following an internal investigation, on April 29, 2024, Defendant learned that the compromised data included personally identifiable information ("PII"), including names, dates of birth, Social Security numbers, and financial account information (the "Data Breach"), as well as protected health information ("PHI"). Plaintiff refers to both categories as "PII/PHI."

5.      On or about June 14, 2024—approximately 9 months after the Data Breach—Jacobsen Construction finally began notifying Class Members about the Data Breach. Plaintiff's Notice is attached as Exhibit A. The Notice located on the website of the Maine Attorney General's Office is attached as Exhibit B (the "Notice").

6.      Upon information and belief, cybercriminals were able to breach Defendant's systems over a period of two months because Defendant failed to adequately train its employees on cybersecurity, failed to adequately monitor its agents, contractors, vendors, and suppliers in handling and securing the PII/PHI of Plaintiff, and failed to maintain reasonable security safeguards or protocols to protect the Class's PII/PH—rendering it an easy target for cybercriminals.

7.     Defendant's Notice obfuscates the nature of the Data Breach and the threat it posed. The Notice failed to disclose how many people were impacted, how the Data Breaches happened, or why it took the Defendant approximately nine months before it finally began notifying some victims that cybercriminals had gained access to their highly private information.

8.     Defendant's deliberate failure to timely report the Data Breaches made the victims vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their PII/PHI.

9.     Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII/PHI misuse.

10.    In failing to adequately protect its patients' information, adequately notify them about the breach, and obfuscating the nature of the breach, Defendant violated state law and harmed an unknown number of its current and former employees and clients.

11.    Plaintiff and the Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendant with their PII/PHI. But Defendant betrayed that trust when Defendant failed to properly use up-to-date security practices to prevent the Data Breaches.

12.    Plaintiff Brooke Lilley is a victim of the Data Breach. Her name, date of birth, Social Security number, and health information was exposed during the Data Breach.

13.    The exposure of one's PII/PHI to cybercriminals is a bell that cannot be unrung. Before the Data Breach, the private information of Plaintiff and the Class was exactly that— private. Not anymore. Now, their private information is permanently exposed and unsecure.

**PARTIES**

14.    Plaintiff, Brooke Lilley, is a natural person and citizen of Utah, where she intends to remain.

15.    Defendant Jacobsen Construction is a business corporation incorporated in Utah, with its principal place of business at 5181 W Amelia Earhart Dr., Salt Lake City, UT 84116.

**JURISDICTION AND VENUE**

16.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Members of the proposed Class are citizens of different states than Defendant and there are over 100 putative Class members. After all, at least 9,667 persons were affected, including persons residing in at least the following states: Utah, Massachusetts, and Maine.[1]

17.    This Court has personal jurisdiction over Defendant because it is headquartered in Salt Lake City, Utah, it regularly conducts business in Utah, and has sufficient minimum contacts in Utah.

18.    Venue is proper in this Court because Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

---

[1] *See Data Breach Notification*, OFFICE OF THE MAINE ATTORNEY GENERAL, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/f6db22d1-7945-48b6-b727-0b134a5b4e38.html *and Data Breach Report 2025,* MASS.GOV, https://www.mass.gov/lists/data-breach-notification-reports (last visited March 24, 2025).

## BACKGROUND

*Defendant Collected and Stored the PII/PHI of Plaintiff and the Class*

19.    Jacobsen Construction is an employee-owned construction company founded in 1922, which flaunts itself as one of the nation's top general contractors specializing in healthcare, higher education, commercial, civic, technology, historic renovation, and religious projections.[2]

20.    Headquartered in Salt Lake City, Utah, Jacobsen Construction has three additional locations in the United States and employs over 700 individuals.[3]

21.    On information and belief, Jacobsen Construction accumulates highly private PII/PHI of its employees and clients, including information protected by HIPAA. Given its age, Jacobsen Construction has accrued over 100 years of data and contracts.

22.    In collecting and maintaining its employees and customers'PII/PHI, Jacobsen Construction agreed it would safeguard the data in accordance with state law and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their PII/PHI.

23.    Jacobsen Construction understood the need to protect its current and former employees and customers'PII/PHI and prioritize its data security.

24.    Jacobsen Construction states, "*Safety* is central to who we are," "[s]afety is our top priority," and "staying safe is about all of us."[4] It follows that secure and reliable data storage

---

[2] *Overview Jacobsen Construction,* LINKEDIN, https://www.linkedin.com/company/jacobsen-construction/about/ (last visited March 24, 2025).

[3] *Contact Us,* JACOBSEN CONSTRUCTION, https://www.jacobsenconstruction.com/connect/ (last visited March 24, 2025).

[4] *Safety is About All of Us,* JACOBSEN CONSTRUCTION, https://www.jacobsenconstruction.com/news/safety-its-about-all-of-us/ (last visited March 24, 2025).

should be deeply important to Jacobsen Construction.

25.    Jacobsen Construction employs an Information Technology Team which supports critical systems, and claims to priority cybersecurity to protect sensitive information and uphold the integrity of construction operations.[5]

26.    Despite recognizing its duty to do so, on information and belief, Jacobsen Construction has not implemented reasonable cybersecurity safeguards or policies to protect the PII/PHI of its current and former employees and customers, or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. As a result, Jacobsen Construction leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to employees and customers' PII/PHI.

***Defendant Failed to Safeguard the PII/PHI of Plaintiff and the Class***

27.    Plaintiff is a former employee of Defendant.

28.    Plaintiff received Defendant's Notice on or around June 14, 2024, informing her that her PII/PHI was compromised, including her name, date of birth, Social Security number, and health information.

29.    As a condition of receiving employment from Defendant, Plaintiff provided Defendant with her PII/PHI.

30.    On information and belief, Defendant collects and maintains its current and former employees' and customer's unencrypted PII/PHI in its computer systems.

---

[5] *Jacobsen Construction Information Technology Team - About,* THE ORG, https://theorg.com/org/jacobsen-construction-company-inc/teams/information-technology-team (last visited March 24, 2025).

31.    In collecting and maintaining PII/PHI, Defendant implicitly agreed that it will safeguard the data using reasonable means according to state and federal law.

32.    For over two months, from September 21, 2023, through November 26, 2023, cybercriminals hacked Defendant's network and accessed extremely sensitive information, including social security numbers, financial account information, and protected health information.

33.    It is unclear when Defendant discovered the two-month long Data Breach. In the Notice Defendant sent to Plaintiff and Class Members, Defendant claims it discovered evidence of "suspicious activity" on its network in November 2023. Exs. A & B. However, according to the report Defendant submitted to the Office of the Maine Attorney General, Defendant stated it did not discover the Data Breach until April 29, 2024.[6]

34.    Regardless of whether it took Defendant two months or six months to discover the Data Breach, Defendant's cyber and data security systems were completely inadequate and allowed cybercriminals to obtain files containing a treasure trove of thousands of its employees' and customers' highly private information continuously over the course of two months.

35.    On or about March June 14, 2024—almost nine months after the Data Breach first occurred—Defendant finally began notifying some Class Members about the Data Breach. Ex. A.

36.    Thus, Defendant kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

---

[6] *Data Breach Notification*, OFFICE OF THE MAINE ATTORNEY GENERAL, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/f6db22d1-7945-48b6-b727-0b134a5b4e38.html (last visiting March 24, 2025).

37.    Despite its duties to safeguard PII/PHI, Defendant did not in fact follow industry standard practices in securing current employees', former employees', and customers' PII/PHI, as evidenced by the Data Breach.

38.    In response to the Data Breach, Defendant contends "we are continuing to work closely with cybersecurity professionals to identify and implement additional controls to improve our security posture on an ongoing basis." Exs. A & B. Although Defendant fails to expand on what these "additional controls" are in any substantive detail, such "additional controls," if implemented at all, should have been in place before the first data breach.

39.    Through its Notice, Defendant recognized the actual imminent harm and injury that flowed from the Data Breach, so it encouraged breach victims to "remain vigilant to protect against potential fraud and/or identity theft by, among other things, reviewing your account statements and monitoring credit reports closely." Exs. A & B.

40.    Despite advising its current employees, former employees, and customers to remain vigilant, Defendant waited an unreasonable amount of time before it began notifying victims, depriving Plaintiff and the Class of the earliest opportunity to take appropriate measures to protect their PII/PHI and take other necessary steps to mitigate the harm caused by the Data Breach.

41.    On information and belief, Defendant has offered complimentary credit monitoring services to victims, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the information compromised involves PII/PHI that cannot be changed, such as Social Security numbers.

42.     Even with several months of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' PII/PHI is still substantially high. The fraudulent activity resulting from the Data Breaches may not come to light for years.

43.     Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's PII/PHI (although in Plaintiff's case, her Social Security number was compromised). Cybercriminals can cross-reference the data stolen from the Data Breaches and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff and the Class's financial accounts.

44.     On information and belief, Defendant failed to adequately train its IT and data security patients on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its patients' PII/PHI. Defendant's negligence is evidenced by its failure to prevent the Data Breach, and to stop cybercriminals from accessing the PII/PHI it stored in its network.

45.     Furthermore, Defendant obfuscates the nature of the breach, failing to clearly inform the public when Defendant discovered the breach, how it happened, and how many people were impacted. Additionally, Defendant confusingly claims a third party "attempted to encrypt some of our computer files" but was "ultimately unsuccessful," while simultaneously confirming that the compromised files including Plaintiff's name, date of birth, Social Security number, and health information. Ex. A.

***INC Ransom Obtained the PII/PHI of Plaintiff and the Class and Posted it for Sale***

46.     Through its inadequate security practices, Defendant exposed Plaintiff's and the

9

Class Members' PII/PHI for theft and sale on the Dark Web.

47. Worryingly, the cybercriminals that obtained Plaintiff's and Class members' PII/PHI appear to be the notorious cybercriminal group "INC Ransom."[7]

48. INC Ransom emerged as a ransomware group in August 2023 and are known for using "double and triple extortion" on their victims.[8]

49. Unlike many opportunistic ransomware operators, INC Ransom appears to carefully select its targets, typically using spear-phishing as the initial access vector, and often aiming at entities with substantial financial resources and sensitive data, which makes the potential payoff from their ransom demands significantly higher.[9]

50. Looking at the industries in which INC Ransom's victim organizations work, the majority are in Professional Services, Manufacturing, and Construction.[10]

51. On or around September 28, 2023, INC Ransom claimed credit for the Data Breach in a post on its Dark Web website.[11]

52. On its Dark Web website, INC Ransom bragged that it had stolen the following categories of data from Jacobsen Construction: "financial reports, contracts with clients, contracts with contractors, private mail correspondence, data of current and completed projects and many

---

[7] *Victims*, RANSOMWARE LIVE, https://www.ransomware.live/search/jacobsen%20construction#victims (last visited March 24, 2025).

[8] Threat Alert: INC Ransomware, CYBEREASON, https://www.cybereason.com/blog/threat-alert-inc-ransomware (last visited March 24, 2025).

[9] *Dark Web Profile: INC Ransom,* SOCRADAR, https://socradar.io/dark-web-profile-inc-ransom/ (last visited March 24, 2025).

[10] *Id.*

[11] *Leak Site Monitoring – Jacobsen Construction*, RANSOMWARE POSTS, https://ransom.privtools.eu/ (last visited March 24, 2025).

confidential contracts for huge sums." It stated, "In the event we do not come to an agreement, the entire company data will be available for download." INC Ransom also posted samples of the leaked data as proof it would be for sale.[12] A copy of INC Ransom's post to its Dark Web website is posted below:

---

[12] *Victims*, RANSOMWARE LIVE, https://www.ransomware.live/search/jacobsen%20construction#victims (last visited March 24, 2025).





Created: 28 Sep 2023
Updated: 29 Sep 2023

Jacobsen Construction    jacobsenconstruction.com

We present to you – jacobsenconstruction.com

We use an uncommon and empowering employee-ownership structure that creates significant long-term financial opportunities for the workforce; promotes productivity and quality work; and drives a unique company culture of mentorship, caring, unity, accountability and high morale. Through our Employee Stock Ownership Plan, employees own 100% of the company.

Jacobsen is an ESOP organization, and every employee in our firm is an owner and stakeholder. That also means each one of us is deeply invested in Jacobsen's success. Our sense of personal ownership in our work — every day and on every project — is reflected in the results we achieve for our clients.

In the course of a successful cyber attack on this company, we encrypted part of the company's servers. We also stole all the latest critical data of the company. Such as financial reports, contracts with clients, contracts with contractors, private mail correspondence, data of current and completed projects and many confidential contracts for huge sums.

In the event that we do not come to an agreement, the entire company data will be available for download.

## INC RANSOM

 Leaks

 Submit a feedback

 Twitter

### Proof pack





53. As seen above, INC Ransom's post provided photocopies of confidential documents from Jacobsen Construction's network.[13]

54. Thus, on information and belief, INC Ransom has *already leaked* the stolen PII/PHI of thousands of Defendant's current and former employees.

55. Thus, on information and belief, Plaintiff's and the Class's stolen PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

56. Moreover, INC Ransom claims, and the data it leaked also suggests, "[i]n the course of a successful cyber attach on this company, we encrypted part of the company's servers."[14] Yet Jacobsen Construction states, in the Notice it sent to Plaintiff and the Class, an "unauthorized third party accessed some of our computer files…and attempted to encrypt some of our computer files. While the third party was ultimately unsuccessful." Exs. A & B.

57. Therefore, upon information and belief, Jacobsen Construction's Notice to Plaintiff and the Class is false, intentionally misleading, and intentionally downplays the severity of the Data Breach and the threat it poses to thousands of individuals.

*Defendant Knew—or Should Have Known—of the Risk of a Data Breach*

58. It is well known that PII/PHI, including Social Security numbers, is an invaluable commodity and a frequent target of hackers.

59. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

---

[13] *Id.*
[14] *Id.*

60.      In fact, out of twenty industries that were analyzed, the construction industry was targeted the most and witnessed the highest count of ransomware attacks from January 2022 to January 2023.[15]

61.      In 2024, 3,158 data breaches occurred, exposing approximately 1,350,835,988 sensitive records—a 211% increase year-over-year.[16]

62.      Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[17]

63.      Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in the construction industry, including Defendant.

64.      Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep PII/PHI private and secure, Defendant failed to take appropriate steps to protect the PII/PHI of Plaintiff and Class Members from being compromised.

---

[15] *Ransomware Statistics: Who is targeted the most?* NORDLOCKER, https://nordlocker.com/ransomware-attack-statistics/  (last visited March 24, 2025).

[16]  *2024 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER, https://www.idtheftcenter. org/publication/2024-data-breach-report/ (last visited March 24, 2025).

[17] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware,* LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited March 24, 2025).

65.    This readily available and accessible information confirms that, prior to the Data Breach, Defendant knew or should have known that (i) ransomware actors were targeting entities such as Defendant, (ii) ransomware gangs were ferociously aggressive in their pursuit of entities such as Defendant, (iii) ransomware gangs were leaking corporate information on dark web portals, and (iv) ransomware tactics included extortion and threatening to release stolen data.

66.    In light of the information readily available and accessible before the Data Breach, Defendant, knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' PII/PHI could be accessed, exfiltrated, and published as the result of a cyberattack. Data breaches are so prevalent in today's society therefore making the risk of experiencing a data breach entirely foreseeable to Defendant.

***Plaintiff's Experience and Injuries***

67.    Plaintiff is a former employee of Defendant and a data breach victim.

68.    As a condition of receiving employment, Defendant required Plaintiff to provide her PII/PHI, including at least her name, Social Security Number, and health information.

69.    Plaintiff provided her PII/PHI to Defendant and trusted that the company would use reasonable measures to protect it according to state and federal law.

70.    Additionally, Plaintiff reasonably expected that her personal information would be destroyed once her employment with Defendant ended.

71.    As a result of its inadequate cybersecurity measures and data destruction policies, Defendant exposed Plaintiff's PII/PHI for theft by cybercriminals and sale on the dark web.

72.    Indeed, given INC Ransom's Dark Web post, Plaintiff's PII/PHI has been published, or will be published imminently by cybercriminals for further theft and sale on the Dark Web.

73.    Plaintiff does not recall ever learning that her PII/PHI was compromised in former a data breach incident, other than the breach at issue in this case.

74.    Defendant deprived Plaintiff of the earliest opportunity to guard herself against the Data Breach's effects by failing to promptly notify her about the Data Breaches.

75.    Plaintiff suffered actual injury from the exposure of her PII/PHI —which violates her rights to privacy.

76.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of her PII/PHI. After all, PII/PHI is a form of intangible property—property that Defendant was required to adequately protect.

77.    As a result of the Data Breach, Plaintiff has spent time and made reasonable efforts to mitigate its impact, including but not limited to researching the Data Breach, reviewing credit card and financial account statements and monitoring her credit information.

78.    Plaintiff has already spent many hours and will continue to spend considerable time and effort monitoring her accounts to protect herself from identity theft. Plaintiff fears for her personal financial security and uncertainty over what PII/PHI was exposed. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. Plaintiff is experiencing anxiety, distress, and fear regarding how the exposure and loss of her Social Security number will impact her. This goes far beyond allegations of mere worry or

16

inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

79.    Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from her PII/PHI being placed in the hands of unauthorized third parties. This injury is worsened by Defendant's failure to promptly inform Plaintiff about the Data Breach.

80.    Upon information and belief, Plaintiff's PII has already been stolen and used by someone to file her taxes. When Plaintiff filed taxes, the IRS made her verify her identity because someone attempted to user her personal information to file her taxes.

81.    Additionally, Plaintiff has received email notifications from PayPal and DocuSign, although she has never had accounts with either of those companies. Upon information and belief, someone made a PayPal account in Plaintiff's name, in an attempt to make online purchases.

82.    DocuSign is a document signing software commonly used by some of the largest financial institution in the US, including Bank of America, Capital One, and US Bank.[18] Upon information and belief, someone stole Plaintiff's identity in an attempt to finalize a transaction where her signature was required, thereby prompting DocuSign to send her documentation for signature.

83.    Plaintiff has also experienced a substantial increase in scam and spam text messages and emails, and received magazines in the mail addressed to her with her address, although she never subscribed to those magazines.

---

[18] *Support,* DOCUSIGN , https://support.docusign.com/s/document-item?language=en_US&bundleId=nev1616188902448_2022-03-10&topicId=jbv1616195759386.html&_LANG=enus (last visited March 44, 2025).

84.     Once an individual's PII/PHI is for sale and access on the dark web, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[19] Plaintiff's name, date of birth, Social Security number, and medical information were compromised as a result of the Data Breach.

85.     Plaintiff has a continuing interest in ensuring that her PII/PHI, which, upon information and belief, remains in Defendant's possession despite the fact she is no longer employed by Defendant, is protected and safeguarded from future breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

86.     Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII/PHI that can be directly traced to Defendant.

87.     As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. Plaintiff and the class have suffered or are at an increased risk of suffering:

    a.   The loss of the opportunity to control how their PII/PHI is used;

    b.   The diminution in value of their PII/PHI;

    c.   The compromise and continuing publication of their PII/PHI;

    d.   Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

---

[19] *What do Hackers do with Stolen Information,* AURA, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited March 44, 2025).

e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breaches, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f. Delay in receipt of tax refund monies;

g. Unauthorized use of stolen PII/PHI; and

h. The continued risk to their PII/PHI, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII/PHI in its possession.

88. Stolen PII/PHI is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII/PHI can be worth up to $1,000.00 depending on the type of information obtained.

89. The value of Plaintiff's and the proposed Class's PII/PHI on the black market is considerable. Stolen PII/PHI trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

90. Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover, Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

19

91.     It can take victims years to spot identity or PII/PHI theft, giving criminals plenty of time to use that information for cash.

92.     One such example of criminals using PII/PHI for profit is the development of "Fullz" packages.

93.     Cyber-criminals can cross-reference two sources of PII/PHI to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

94.     The development of "Fullz" packages means that stolen PII/PHI from the Data Breaches can easily be used to link and identify it to Plaintiff's and the Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII/PHI stolen by the cyber-criminals in the Data Breaches, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and the Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and members of the Class's stolen PII/PHI is being misused, and that such misuse is fairly traceable to the Data Breaches.

95.     Defendant disclosed the PII/PHI of Plaintiff and members of the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII/PHI of Plaintiff and the Class to people engaged in disruptive and unlawful

business practices and tactics, including online account hacking, extortion, and exposure of stolen PII/PHI.

96.    Defendant's failure to properly notify Plaintiff and the Class of the Data Breaches exacerbated Plaintiff's and the Class's injuries by depriving them of the earliest opportunity to take appropriate measures to protect their PII/PHI and take other necessary steps to mitigate the harm caused by the Data Breach.

***Consumers Prioritize Data Security***

97.    In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[20] Therein, Cisco reported the following:

    a.    "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[21]

    b.    "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[22]

    c.    89% of consumers stated that "I care about data privacy."[23]

---

[20] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, Cisco, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited March 19, 2025).
[21] *Id*. at 3.
[22] *Id*.
[23] *Id*. at 9.

     d.       83% of consumers declared that "I am willing to spend time and money to

protect data" and that "I expect to pay more" for privacy.[24]

     e.       51% of consumers revealed that "I have switched companies or providers

over their data policies or data-sharing practices."[25]

     f.       75% of consumers stated that "I will not purchase from organizations I don't

trust with my data."[26]

***Defendant Failed to Adhere to FTC Guidelines***

98.      According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII/PHI.

99.      In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.  The guidelines explain that businesses should:

     a.       protect the personal customer information that they keep;

     b.       properly dispose of personal information that is no longer needed;

     c.       encrypt information stored on computer networks;

     d.       understand their network's vulnerabilities; and

     e.       implement policies to correct security problems.

---

[24] *Id.*
[25] *Id.*
[26] *Id.* at 11.

100. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

101. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

102. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

103. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to patients' PII/PHI constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

*Defendant Failed to Follow Industry Standards*

104. Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendant. These industry standards include: educating all employees regarding cybersecurity; strong passwords; multi-layer security, including firewalls, anti-virus, and anti- malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

105.    Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

106.    Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established standards in reasonable cybersecurity readiness.

107.    These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

***Defendant Violated HIPAA***

108.    HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII and PHI is properly maintained.[27]

---

[27] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

109.    The Data Breach itself resulted from a combination of inadequacies showing Defendant failed to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

- failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

- failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

- failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

- failing to ensure compliance with HIPAA security standards by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

- failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

- failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

- failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

- failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

- failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

110. Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

## CLASS ACTION ALLEGATIONS

111. Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose PII/PHI was compromised in the Data Breach of Jacobsen Construction Company, Inc.'s network, including all those individuals who received notice of the breach.

112. Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including its staff and immediate family.

113. Plaintiff reserves the right to amend the class definition.

114. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on class-wide basis using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

115.    This action satisfies the numerosity, commonality, typicality, and adequacy requirements.

116.    **Numerosity.** The Class members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least 9,667 members.

117.    **Commonality and Predominance.** Plaintiff's and the Class Members' claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer the following questions:

      a.    if Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII/PHI;

      b.    if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

      c.    if Defendant was negligent in maintaining, protecting, and securing PII/PHI;

      d.    if Defendant breached contract promises to safeguard Plaintiff and the Class's PII/PHI;

      e.    if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

      f.    if Defendant's Breach Notice was reasonable;

      g.    if the Data Breach caused Plaintiff and the Class injuries;

      h.     what the proper damages measure is; and

      i.     if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

118. **Typicality.** Plaintiff's claims are typical of Class Members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

119. **Adequacy.** Plaintiff will fairly and adequately protect the proposed Class's common interests. Her interests do not conflict with Class Members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

120. **Appropriateness.** The likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

121. **Ascertainability.** All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. After all, Defendant already identified some victims and sent them data breach notices.

### FIRST CAUSE OF ACTION
**Negligence**
**(On Behalf of Plaintiff and the Class)**

122. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

123.    Plaintiff and the Class entrusted their PII/PHI to Defendant on the premise and with the understanding that Defendant would safeguard their PII/PHI, use their PII/PHI for business purposes only, and/or not disclose their PII/PHI to unauthorized third parties.

124.    Defendant owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII/PHI in a data breach. And here, that foreseeable danger came to pass.

125.    Defendant has full knowledge of the sensitivity of the PII/PHI and the types of harm that Plaintiff and the Class could and would suffer if their PII/PHI was wrongfully disclosed.

126.    Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiff's and Class Members' PII/PHI.

127.    Defendant owed—to Plaintiff and Class Members—at least the following duties to:

a.    exercise reasonable care in handling and using the PII/PHI in its care and custody;

b.    implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

c.    promptly detect attempts at unauthorized access;

d.    notify Plaintiff and Class Members within a reasonable timeframe of any breach to the security of their PII/PHI.

29

128. Also, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their PII/PHI, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

129. Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII/PHI it was no longer required to retain under applicable regulations.

130. Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII/PHI of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

131. Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII/PHI, a necessary part of employment from Defendant.

132. The risk that unauthorized persons would attempt to gain access to the PII/PHI and misuse it was foreseeable. Given that Defendant holds vast amounts of PII/PHI, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII/PHI —whether by malware or otherwise.

133. PII/PHI is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII/PHI of Plaintiff's and Class Members' and the importance of exercising reasonable care in handling it.

30

134. Defendant improperly and inadequately safeguarded the PII/PHI of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breaches.

135. Defendant breached these duties as evidenced by the first and second Data Breaches.

136. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff 'and Class Members' PII/PHI by:

     a.     disclosing and providing access to this information to third parties and

     b.     failing to properly supervise both the way the PII/PHI was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

137. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the PII/PHI of Plaintiff and Class Members which actually and proximately caused the Data Breaches and Plaintiff's and Class Members' injury.

138. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breaches to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breaches and Plaintiff's and Class Members' injuries-in-fact.

139. Defendant has admitted that the PII/PHI of Plaintiff and the Class was accessed by an intruder to its systems.

140. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary

damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

141. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII/PHI by criminals, improper disclosure of their PII/PHI, lost value of their PII/PHI, and lost time and money incurred to mitigate and remediate the effects of the Data Breaches that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

<u>**SECOND CAUSE OF ACTION**</u>
**Negligence *per se***
**(On Behalf of Plaintiff and the Class)**

142. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

143. Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII/PHI.

144. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII/PHI entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the Class Members' sensitive PII/PHI.

145.    Defendant breached its respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII/PHI.

146.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII/PHI and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII/PHI Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

147.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

148.    But for Defendant's wrongful and negligent breach of its duties owed, Plaintiff and Class Members would not have been injured.

149.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII/PHI.

150.    Defendant's violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

33

151.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**THIRD CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

152.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

153.    Defendant offered to provide employment and/or services to Plaintiff and members of the Class if, and in exchange, Plaintiff and members of the Class provided Defendant with their PII/PHI.

154.    In turn, Defendant agreed it would not disclose the PII/PHI it collects to unauthorized persons.

155.    Plaintiff and the members of the Class accepted Defendant's offer by providing PII/PHI to Defendant in exchange for Defendant's services.

156.    Implicit in the parties' agreement was that Defendant would provide Plaintiff and members of the Class with prompt and adequate notice of all unauthorized access and/or theft of their PII/PHI.

157.    Plaintiff and the members of the Class would not have entrusted their PII/PHI to Defendant in the absence of such an agreement with Defendant.

158.    Defendant materially breached the contracts it had entered with Plaintiff and members of the Class by failing to safeguard such information and failing to notify them promptly of the intrusions into its computer systems that compromised such information. Defendant also breached the implied contracts with Plaintiff and members of the Class by:

34

a. Failing to properly safeguard and protect Plaintiff's and members of the Class's PII/PHI;

b. Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

c. Failing to ensure the confidentiality and integrity of electronic PII/PHI that Defendant created, received, maintained, and transmitted.

159. The damages sustained by Plaintiff and members of the Class as described above were the direct and proximate result of Defendant's material breaches of its agreement(s).

160. Plaintiff and members of the Class have performed under the relevant agreements, or such performance was waived by the conduct of Defendant.

161. The covenant of good faith and fair dealing is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

162. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

163. Defendant failed to advise Plaintiff and members of the Class of that there was not one but two Data Breaches, and failed to send Notice to the victims promptly and sufficiently.

164. In these and other ways, Defendant violated its duty of good faith and fair dealing.

165. Plaintiff and members of the Class have sustained damages because of Defendant's breaches of its agreement, including breaches of it through violations of the covenant of good faith and fair dealing.

166. Plaintiff, on behalf of herself and the Class, seeks compensatory damages for breach of implied contract, which includes the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

<u>FOURTH CAUSE OF ACTION</u>
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

167. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

168. Plaintiff restates and realleges all proceeding allegations above and hereafter as if fully set forth herein.

169. Upon information and belief, Defendant funds its data security measures from its general revenue, including payments made by or on behalf of Plaintiff and the Class Members.

170. As such, a portion of the payments made by or on behalf of Plaintiff and the Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

171. Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they either provided services, in the form of employment, or purchased services from Defendant and/or its agents and in so doing provided Defendant or its agents with their PII/PHI. In exchange, Plaintiff and Class Members should have received from Defendant the goods and services that were the subject of the transaction and have their PII/PHI protected with adequate

36

data security.

172. Defendant knew that Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the PII/PHI of Plaintiff and Class Members for business purposes.

173. Plaintiff and Class Members conferred a monetary benefit on Defendant, by paying Defendant as part of Defendant rendering services, a portion of which was to have been used for data security measures to secure Plaintiff's and Class Members' PII/PHI, and by providing Defendant with their valuable PII/PHI.

174. Defendant was enriched by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII/PHI. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant calculated to avoid the data security obligations at the expense of Plaintiff and the Class by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

175. Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

176. Defendant acquired the monetary benefit and PII/PHI through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

177. If Plaintiff and Class Members knew that Defendant had not secured their PII/PHI, they would not have agreed to provide their PII/PHI to Defendant either directly or through their

own financial institutions.

178.    Plaintiff and Class Members have no adequate remedy at law.

179.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) the loss of the opportunity how their PII/PHI is used; (ii) the compromise, publication, and/or theft of their PII/PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII/PHI; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII/PHI, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PII/PHI in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII/PHI compromised as a result of the Data Breaches for the remainder of the lives of Plaintiff and the Class.

180.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm.

181.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's services.

38

**FIFTH CAUSE OF ACTION**
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

182.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

183.    Plaintiff and Class Members had a legitimate expectation of privacy regarding their PII/PHI and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

184.    Defendant owed a duty to Plaintiff and Class Member to keep their PII/PHI confidential.

185.    The unauthorized disclosure and/or acquisition (i.e., theft) by a third party of Plaintiff's and Class Members' PII/PHI, including sensitive photographs, is highly offensive to a reasonable person.  It constitute an invasion of privacy both by disclosure of nonpublic facts, and intrusion upon seclusion.

186.    Defendant's reckless and negligent failure to protect Plaintiff's and Class Members' PII/PHI constitutes an intentional interference with Plaintiff's and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

187.    Defendant's failure to protect Plaintiff's and Class Members' PII/PHI acted with a knowing state of mind when it permitted the Data Breaches because it knew its information security practices were inadequate.

188.    Defendant knowingly did not notify Plaintiff's and Class Members in a timely fashion about the Data Breach.

189.    Because Defendant failed to properly safeguard Plaintiff's and Class Members' PII/PHI, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

190.    As a proximate result of Defendant's acts and omissions, the PII/PHI of Plaintiff and the Class Members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

191.    Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII/PHI is still maintained by Defendant with their inadequate cybersecurity system and policies.

192.    Plaintiff and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their PII/PHI. A judgment for monetary damages will not end Defendant's inability to safeguard the PII/PHI of Plaintiff and the Class.

193.    Plaintiff and Class Members, seek injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiff's and Class Members' PII/PHI.

194.    Plaintiff and Class Members seek compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

<u>**SIXTH CAUSE OF ACTION**</u>
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

195.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

196.    Given the relationship between Defendant and Plaintiff and the Class Members, where Defendant became guardian of Plaintiff's and Class Members' PII/PHI,

Defendant became a fiduciary by its undertaking and guardianship of the PII/PHI, to act primarily for Plaintiff and Class members, (1) for the safeguarding of Plaintiff and Class members' PII/PHI; (2) to timely notify Plaintiff and Class Members of the Data Breaches and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

197.    Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of Defendant's relationship with them—especially to secure their PII/PHI.

198.    Because of the highly sensitive nature of the PII/PHI, Plaintiff and Class members (or their third-party agents) would not have entrusted Defendant, or anyone in Defendant's position, to retain their PII/PHI had they known the reality of Defendant's inadequate data security practices.

199.    Defendant breached its fiduciary duties to Plaintiff and Class members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class members' PII/PHI.

200.    Defendant also breached its fiduciary duties to Plaintiff and Class members by failing to diligently discover, investigate, and give notice of the Data Breaches in within a reasonable and practicable time period.

201.    As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**SEVENTH CAUSE OF ACTION**
**Declaratory Judgment**
**(On Behalf of Plaintiff and the Class)**

202.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

203.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant

further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

204. In the fallout of the Data Breach, an actual controversy has arisen about Defendant's various duties to use reasonable data security. On information and belief, Plaintiff alleges that Defendant's actions were—and *still* are—inadequate and unreasonable. And Plaintiff and Class members continue to suffer injury from the ongoing threat of fraud and identity theft.

205. Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant owed—and continues to owe—a legal duty to use reasonable data security to secure the data entrusted to it;

b. Defendant has a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

c. Defendant breached, and continues to breach, its duties by failing to use reasonable measures to the data entrusted to it; and

d. Defendant's breaches of its duties caused—and continues to cause—injuries to Plaintiff and Class members.

206. The Court should also issue corresponding injunctive relief requiring Defendant to use adequate security consistent with industry standards to protect the data entrusted to it.

207. If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendant experiences a second data breach.

208. And if a second breach occurs, Plaintiff and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be

42

forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages—while warranted for out-of-pocket damages and other legally quantifiable and provable damages—cannot cover the full extent of Plaintiff and Class members' injuries.

209.    If an injunction is not issued, the resulting hardship to Plaintiff and Class members far exceeds the minimal hardship that Defendant could experience if an injunction is issued.

210.    An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiff, Class members, and the public at large.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of all others similarly situated, prays for relief as follows:

    a.  For an order certifying the Class, and naming Plaintiff as representatives of the Class, and Plaintiff's attorneys as Class Counsel;

    b.  For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

    c.  For damages in an amount to be determined by the trier of fact;

    d.  For an order of restitution and all other forms of equitable monetary relief;

    e.  Declaratory and injunctive relief as described herein;

    f.  Awarding Plaintiff reasonable attorneys' fees, costs, and expenses as otherwise allowed by law;

    g.  Awarding pre- and post-judgment interest on any amounts awarded; and

    h.  Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the putative Class, demands a trial by jury on all claims so triable.

Dated: March 25, 2025

                              **MARSHALL OLSON & HULL, PC**

                              BY:    /s/ Anikka T. Hoidal
                                      JASON R. HULL
                                      ANIKKA T. HOIDAL

                              **STRAUS BORRELLI, PLLC**
                              RAINA C. BORRELLI*

                              * *pro hac vice* forthcoming

                              *Counsel for Plaintiff and the Proposed Class*